# 22-178

*To be Argued by:* PAUL D. SILVER

# United States Court of Appeals

## FOR THE SECOND CIRCUIT
### Docket No. 22-178

UNITED STATES OF AMERICA,

*Appellee,*

v.

TERRY LAJEUNESSE,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## CORRECTED BRIEF FOR APPELLEE
## UNITED STATES OF AMERICA

CARLA B. FREEDMAN
*United States Attorney*
*Northern District of New York*
445 Broadway
Albany, NY 12207
Tele: 518-431-0247
Email: Paul.Silver@usdoj.gov

PAUL D. SILVER
*Assistant United States Attorney*
  *of Counsel*

# TABLE OF CONTENTS

PAGE

STATEMENT OF THE ISSUES
PRESENTED .................................................. 1

STATEMENT OF THE CASE ............................ 2

    A.  Introduction............................................ 2

    B.  Procedural History................................. 2

STATEMENT OF FACTS .................................. 5

    A. Offense Conduct....................................... 5

    B. Suppression Motion Proceedings.............. 9

        1.  Lajeunesse's Motion to
            Suppress ............................................. 9

        2.  Government Opposition to
            Motion to Suppress ......................... 10

        3.  Lajeunesse's Reply to the
            Government's Opposition ............... 12

        4.  District Court Decision
            Denying Lajeunesse's
            Suppression Motion ....................... 12

            a.  Factual Findings....................... 13

            b.  Legal Discussion ...................... 18

                (i) Samsung Cellular
                Telephone .................................. 18

                (ii) ZTE Cellular Telephone....... 22

ii

C. Change of Plea Proceeding......................22

D. Sentencing Proceedings ..........................23

    1. Presentence Investigation
    Report .............................................23

    2. Sentencing Memoranda...................24

       a.  Lajeunesse's Sentencing
          Memorandum............................24

       b.  Government's Sentencing
          Memorandum............................25

    3. Sentencing Hearing .........................25

SUMMARY OF ARGUMENT .............................31

ARGUMENT .......................................................34

POINT I:
    The District Court Did Not Err In
    Denying Lajeunesse's Motion to
    Suppress Evidence Obtained From His
    Samsung Cellular Telephone......................34

    A. Governing Law .......................................34

    B.  Standard of Review...............................41

    C.  Discussion..............................................41

       1. Probation Officer Murray
          conducted a lawful "special
          needs" search....................................41

iii

    2. Probation Officer Murray's actions were reasonable, making suppression of evidence unwarranted. ................... 44

POINT II:
    Lajeunesse's Plea Agreement Waiver of His Appellate Rights Bars Consideration of His Claim that the District Court Failed to Provide Him a Right to Allocute at Sentencing. ................. 46

    A.   Governing Law ...................................... 46

        1. Plea Agreement Waivers of Appellate Rights ............................. 46

        2. Right to Allocute at Sentencing ....... 49

    B.   Standard of Review .............................. 50

    C.   Discussion ............................................ 51

CONCLUSION .................................................... 55

iv

# TABLE OF AUTHORITIES

**Cases:**

*Griffin v. Wisconsin,*
    483 U.S. 868 (1987) .................................... 34, 35

*Herring v. United States,*
    555 U.S. 135 (2009) .................................... 44, 45

*Samson v. California,*
    547 U.S. 843 (2008) ......................................... 38

*United States v. Arevalo,*
    628 F.3d 93 (2d Cir. 2010) ............. 47, 48, 52, 54

*United States v. Axelrod,*
    48 F.3d 72 (2d Cir. 1995)................................. 50

*United States v. Barner,*
    666 F.3d 79 (2d Cir. 2012) .............................. 40

*United States v. Borden,*
    16 F.4th 351 (2d Cir. 2021) ............................. 46

*United States v. Braggs,*
    5 F.4th 183 (2d Cir. 2021) ............................... 41

*United States v. Buissereth,*
    638 F.3d 114 (2d Cir. 2011) ............................ 49

*United States v. Cardona,*
    903 F.2d 60 (1st Cir. 1990) ............................. 37

*United States v. Coston,*
    737 F.3d 235 (2d Cir. 2013) ................. 46, 47, 52

v

*United States v. Eldred*,
  933 F.3d 110 (2d Cir. 2019) ............................ 41

*United States v. Gomez*,
  877 F.3d 76 (2d Cir. 2017) ............................... 44

*United States v. Gomez-Perez*,
  215 F.3d 315 (2d Cir. 2000) ............................ 46

*United States v. Green*,
  897 F.3d 443 (2d Cir. 2018) ............................ 51

*United States v. Grimes*,
  225 F.3d 254 (2d Cir 2000) ................. 37, 39, 40

*United States v. Jones*,
  43 F.4th 94 (2d Cir. 2022) ............................... 41

*United States v. Julius*,
  610 F.3d 60 (2d Cir. 2010) .............................. 45

*United States v. Knights*,
  534 U.S. 112 (2001) ....................... 35, 36, 37, 38

*United States v. Lambus*,
  897 F.3d 368 (2018) ......................................... 37

*United States v. Lawlor*,
  168 F.3d 633 (2d Cir. 1999) ............................ 51

*United States v. Li*,
  115 F.3d 125 (2d Cir. 1997) ............................ 50

*United States v. Liriano-Blanco*,
  510 F.3d 168 (2d Cir. 2007) ....................... 47, 48

vi

*United States v. Margiotti*,
85 F.3d 100 (2d Cir. 1996) .............................. 50

*United States v. Newton*,
369 F.3d 659 (2d Cir. 2004) ...................... 37, 38

*United States v. Padilla*,
186 F.3d 136 (2d Cir. 1999) ........................... 51

*United States v. Quinones*,
707 F. App'x 184 (4th Cir. 2017) .................... 54

*United States v. Reyes*,
283 F.3d 446 (2d Cir. 2002) ........................... 38

*United States v. Riggi*,
649 F.3d 143 (2d Cir. 2011) ................ 46, 47, 52

*United States v. Smith*,
967 F.3d 198 (2d Cir. 2020) ........................... 45

*United States v. Whitmer*,
505 F. App'x 167 (3d Cir. 2012) ...................... 54

*United States v. Yemitan*,
70 F.3d 746 (2d Cir. 1995) .............................. 47

**Federal Statutes, Rules and Other Authorities:**

18 U.S.C. § 1512(c)(2) ........................................... 3

18 U.S.C. § 2252A(a)(2)(A) ............................... 2, 3

18 U.S.C. § 2252A(a)(5)(B) ............................... 2, 3

vii

18 U.S.C. § 2252A(b)(1) ..................................... 2, 3

18 U.S.C. § 2252A(b)(2) ..................................... 2, 3

18 U.S.C. § 3553(a) ................................. 26, 30, 49

Fed. R. Crim. P. 32............................ 34, 48, 49, 54

Fed. R. Crim. P. 32(i)(4)...................................... 50

Fed. R. Crim. P. 32(i)(4)(A)(ii) ........................... 54

U.S.S.G. § 5G1.1(c)(2) ........................................ 26

**State Statutes, Rules and Other Authorities:**

N.Y. Penal Law § 263.16 ............................ 5, 8, 17

# 𝕌𝕟𝕚𝕥𝕖𝕕 𝕊𝕥𝕒𝕥𝕖𝕤 ℂ𝕠𝕦𝕣𝕥 𝕠𝕗 𝔸𝕡𝕡𝕖𝕒𝕝𝕤

## FOR THE SECOND CIRCUIT
### Docket No. 22-178

---

UNITED STATES OF AMERICA,
*Appellee,*

v.

TERRY LAJEUNESSE,
*Defendant-Appellant.*

---

## CORRECTED BRIEF FOR THE UNITED STATES OF AMERICA

---

## STATEMENT OF THE ISSUES PRESENTED

1. Whether the district court erred in denying defendant's motion to suppress evidence obtained from his cellular telephone pursuant to a lawful "Special Needs" New York State probation search.

2. Whether defendant's plea agreement waiver of appellate rights bars consideration of his claim that the district court failed to provide him a right to allocute at sentencing.

2

## STATEMENT OF THE CASE

### A. Introduction

Pursuant to a conditional plea agreement, defendant-appellant Terry Lajeunesse appeals an order of the United States District Court for the Northern District of New York (Mordue, S.J.) suppressing evidence obtained from one of his cellular telephones, first by New York State probation officers, and later by the New York State Police, and argues further that he is entitled to be resentenced because the district court (Suddaby, J.) denied his right to allocute at sentencing.

### B. Procedural History

On October 16, 2019, a federal grand jury in the Northern District of New York returned a two-count indictment, charging Lajeunesse in count 1 with possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2), and in count 2 with receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(l). Dkt. 8; A.14-17.[1]

---

[1] References to "Dkt." are to the district court docket entries in Case No. 1:19-cr-00367-GTS-1 (N.D.N.Y.). References to "A." are to the appendix Lajeunesse has filed with this Court. The district court docket is reproduced at A.1-13.

3

On October 5, 2020, Lejeunesse moved to suppress evidence seized from his two cellular telephones. Dkt.27; A.18-87. The government filed opposition to Lajeunesse's motion on November 3, 2020. Dkt.30; A.88-161. Lajeunesse filed a reply on November 10, 2020. Dkt.33; A.162-66. On November 24, 2020, the district court issued a Memorandum-Decision and Order denying Lajeunesse's suppression motion. Dkt.34; A.167-78.

On August 12, 2021, Lajeunesse waived his right to indictment, Dkt.45, and the government filed a three-count superseding information charging Lajeunesse in count 1 with possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2); in count 2 with receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1); and in count 3 with obstruction of justice, in violation of 18 U.S.C. § 1512(c)(2). The information alleged further that Lajeunesse previously was convicted under New York State law of an offense relating to possession of child pornography, subjecting him to enhanced penalties on counts 1 and 2 of the information, in accordance with 18 U.S.C. § 2252A(b)(1) and (2). Dkt.46; A.179-82.

Also on August 12, 2021, pursuant to a conditional plea agreement, Dkt.47; A.183-207, Lajeunesse pled guilty to all three counts of the information, Dkt. Text Minute Entry dated August

4

12, 2021.[2]  On January 26, 2022, the district court sentenced Lajeunesse principally to concurrent 198-month terms of imprisonment on each of the counts of the information.  Dkt. Text Minute Entry dated January 26, 2022; A.249-60.  The district court entered judgment on January 27, 2022. Dkt.62; A.289-96.

Based on information contained on websites for the New York State Department of Correctional Services and Federal Bureau of Prisons, respectively, it appears that Lajeunesse is in the process of being transferred from the custody of the former to the custody of the latter.

---

[2] Senior Judge Mordue transferred Lajeunesse's change of plea proceeding to Judge Suddaby.  Dkt. Text Notice of Hearing dated July 28, 2021.  Judge Suddaby likewise presided over Lajeunesse's sentencing hearing.  Dkt. Text Minute Entry dated January 26, 2022.

5

## STATEMENT OF FACTS

### A. Offense Conduct[3]

On June 6, 2018, Lajeunesse pled guilty in Warren County Court to Possessing a Sexual Performance by a Child, a Class E Felony, in violation of N.Y. Penal Law § 263.16, and was sentenced to a one-year term of interim probation. PSR ¶ 11. The Warren County Court subsequently revoked Lajeunesse's probation and resentenced him to an indeterminate one-to-three-year term of imprisonment. PSR at p.8 n.2.

In July 2018, Lajeunesse's second wife, from whom he was estranged, wrote to the Warren County Probation office, alleging that: Lajeunesse had been consuming alcohol – sometimes while driving; his son's medication was missing; and he threatened her and threatened to take their daughter. PSR ¶ 13. Lajeunesse's second wife requested a welfare check on Lajeunesse's son, who lived with Lajeunesse. PSR ¶ 13.

---

[3] This statement of Lajeunesse's offense conduct is taken from the Presentence Investigation Report (PSR). At the sentencing hearing, counsel for Lajeunesse said that he had no objections to the factual content of the PSR other than as stated in its addendum. A.272. *See* PSR at pp.39-40. The district court said that it had reviewed Lajeunesse's objections, A.272, and the court adopted the factual information in the PSR, A.277.

6

In February 2019, Lajeunesse's first wife sent an email to the Warren County Probation office, identifying herself only as someone who had known Lajeunesse for years. PSR ¶ 14. She alleged that Lajeunesse, who was 48 years old, was dating a teenaged female, consuming alcohol, and staying overnight at the girl's residence while leaving his disabled son home without food. PSR ¶ 14. The email included an image of the Facebook profile of the teenaged girl. PSR ¶ 14.

Lajeunesse's first wife wrote further that Lajeunesse was a "predator," who had molested their three daughters, but gotten away with it. PSR ¶ 14. Lajeunesse's first wife requested that action be taken to prevent Lajeunesse from harming any children. PSR ¶ 14.

On February 27, 2019, the probation officer who received the email contacted the Warren County Sheriff's Office and relayed the information in the email to a patrol officer assigned to the FBI's Child Exploitation Task Force. PSR ¶ 14. The girl whom Lajeunesse was alleged to be seeing was identified, and later determined to be nineteen years old. PSR ¶ 14.[4]

---

[4] On March 15, 2019, four days after seizing Lajeunesse's cellular telephone, a Warren County probation officer spoke with the sister of the girl with whom Lajeunesse had a romantic relationship. The girl's sister confirmed that the

7

On March 11, 2019, two Warren County probation officers conducted an announced visit to Lajeunesse's residence. PSR ¶ 15. One of the officers asked to see Lajeunesse's Samsung cellular telephone to determine whether he had used it to contact a minor. PSR ¶ 15. Lajeunesse handed the cellular telephone to the probation officer, who opened it and observed a picture of the girl Lajeunesse was dating. PSR ¶ 15. Lajeunesse said that the girl was about to turn twenty years old, he had been seeing her since November 2018, and had a sexual relationship with her. PSR ¶ 15.

Two more probation officers arrived at Lajeunesse's residence. PSR ¶ 15. One of them conducted an initial search of the cellular telephone, and observed applications installed on the device that the officer believed to be capable of storing media files and a still picture or thumbnail of a video depicting two teenaged females, one of whom was nude and appeared to be approximately thirteen to fourteen years old. The probation officers then seized the cellular telephone to have a forensic search conducted. PSR ¶ 16.

On March 15, 2019, at the request of the Warren County Probation Office, the New York State Police conducted a forensic examination of the Samsung cellular telephone taken from

---

girl was nineteen years old, soon to turn twenty years old. PSR ¶ 17.

8

Lajeunesse. PSR ¶ 18. That examination revealed approximately 462 images and at least one video which depicted minors engaged in sexually explicit conduct. PSR ¶ 18.

On April 2, 2019, the New York State Police arrested Lajeunesse pursuant to a probation violation warrant, and he was charged with possessing a sexual performance by a child, in violation of N.Y. Penal Law § 263.16. PSR ¶ 19. At the time of his arrest, Lajeunesse possessed a ZTE cellular telephone. PSR ¶ 19.

In May 2019, the New York State Police conducted a further review of the Samsung Cellular telephone taken from Lajeunesse by the Warren County Probation Office. PSR ¶ 20. That review confirmed the existence of child pornography, and disclosed child erotica. PSR ¶¶ 20, 21.

In October 2019 and January 2020, federal search warrants were executed, respectively, on Lajeunesse's Samsung and ZTE cellular telephones. PSR ¶ 23. No additional evidence of criminal activity was obtained pursuant to either search. PSR ¶ 23.

In September 2020, while incarcerated, Lajeunesse wrote two letters to his son, asking him to claim falsely that he was responsible for the child pornography on Lajeunesse's cellular telephone. PSR ¶¶ 26, 27.

9

## B. Suppression Motion Proceedings

### 1. Lajeunesse's Motion to Suppress

On October 5, 2020, Lajeunesse filed a motion to suppress evidence located on his Samsung cellular telephone. Dkt.27; A.18-87. According to Lajeunesse, the "warrantless searches violated the Fourth Amendment because they were not rationally and reasonably related to probation officers' duties. Rather, the searches constituted a suspicionless fishing expedition." A.19.

Lajeunesse argued that the search of his cellular telephone could not be justified as having been conducted pursuant to the probation exception to the warrant requirement because the search was conducted after the probation officer "had determined that Mr. Lajeunesse was not dating a minor." A.25.

Lajeunesse argued further that, "New York law requires that parole or probation searches be rationally and reasonably related to the performance of the parole officer's duty. One such duty is to investigate whether a parolee is violating the conditions of his probation." A.27 (citations and quotation marks omitted). Lajeunesse maintained, however, that:

> the searches of Mr. LaJeunesse's Samsung phone were not rationally and reasonably

related to [Probation Officer] Murray's duties. They were not performed in direct response to information that [Probation Officer] Murray obtained. Instead, the searches were performed to seek contraband or evidence in aid of prosecution for new crimes. Accordingly, the searches violated the Fourth Amendment.

A.27-28.[5]

## 2. Government Opposition to Motion to Suppress

On November 3, 2020, the government filed opposition to Lajeunesse's motion to suppress. Dkt.30; A.88-161.

The government maintained that before conducting his initial search of Lajeunesse's cellular telephone, Probation Officer Murray had reason to believe that Lajeunesse was in a relationship with a girl who the officer believed to be under the age of eighteen; Lajeunesse had an unauthorized and unreported Facebook page, and

---

[5] Lajeunesse also sought suppression of any evidence recovered from his ZTE cellular telephone, which he had with him at the time of his arrest, as derivative of the unlawful search of his Samsung phone. A.29-30. However, no evidence of criminal wrongdoing was recovered from the ZTE telephone. *See* PSR ¶ 23.

11

had been consuming alcohol, all in violation of the terms of his probation. A.92. As well, the government noted that in the email Officer Murry received, Lajeunesse's ex-wife alleged that the girl on the Facebook page was "not the only one" and that the defendant was preying on teenaged girls overseas. A.92-93.

The government argued that as a probationer, Lajeunesse had a diminished expectation of privacy in his cellular telephone, and that expectation of privacy was further diminished because Lajeunesse consented to searches of his electronic devices by the probation office as a condition of his probation. A.95-97.

The government argued further that the probation office's search of Lajeunesse's cellular telephone was reasonable because it was, as required under New York State law, rationally and substantially related to the performance of the probation officer's duties. A.97-106.

The government maintained that the later search of Lajeunesse's ZTE cellular telephone, seized at the time of his arrest, should not be suppressed as fruit of the poisonous tree. The government contended that the ZTE cellular telephone was searched pursuant to the issuance of a valid search warrant, A.106-08, and the officers relied in good faith on the issuance of that warrant, A.109-11.

12

### 3. Lajeunesse's Reply to the Government's Opposition

On November 10, 2020, Lajeunesse filed a reply to the government's opposition. Dkt.33; A.162-66. Lajeunesse maintained that the government wrongly characterized the actions of the probation officers who conducted the search of his Samsung cellular telephone as reasonable. According to Lajeunesse, the quality of the tip that the probation office received was "very poor"; the probation officer failed to verify the information in the tip prior to searching the Samsung cellular telephone; the probation officer searched the Samsung cellular telephone in an effort to find evidence of a crime, not a probation violation; only one officer prepared a contemporaneous report at the time the Samsung cellular telephone was searched; and the probation officer failed to abide by the opinion of a law enforcement officer who believed that she could not conduct a forensic search of the Samsung cellular telephone absent Lajeunesse's consent or the issuance of a search warrant. A.162-66.

### 4. District Court Decision Denying Lajeunesse's Suppression Motion

On November 24, 2020, the district court issued a Memorandum-Decision and Order denying Lajeunesse's motion to suppress. Dkt.34; A.167-78. The district court also denied Lajeunesse's request for a hearing because he failed to submit

13

"an affidavit with any material facts," and did "not contest any of those set forth in the Government's response papers." A.167 n.1.

### a. Factual Findings

Lajeunesse began a term of probation on June 6, 2018, after pleading guilty to one count of Possessing a Sexual Performance by a Child, a New York class E felony. A.167. Warren County Probation Officer Mark Murray was assigned to supervise Lajeunesse during his term of probation. A.167.[6]

> Officer Murray read Lajeunesse the terms of his probation on June 15, 2018, and Lajeunesse signed the terms acknowledging that he understood them and the consequences for violating them. . . . The terms of Lajeunesse's probation contained special conditions, including, *inter alia*:

> 1. Have no deliberate contact with persons under the age of 18 unless supervised by a person approved by your probation officer or the Court and only under circumstances

---

[6] In its Memorandum-Decision and Order, the district court sometimes referred to Lajeunesse as "Defendant." In this brief, the government has substituted Lajeunesse's name in place of "Defendant" without adding brackets.

14

approved by your probation officer or the Court.

9. Permit search of your person, vehicle and place of abode, including any computers or other electronic devices, and seizure of any narcotic implements or illegal drugs, such search to be conducted by a Probation Officer or a Probation Officer and his agent.

24. You will agree to unannounced examination by the supervising Probation Officer or designees of any and all computer(s) and/or other electronic devices(s) to which you have access. This includes access to all data and/or magnetic tape, cell phones, flash drives, memory cards, and/or any storage media whether installed within a device or removable. This examination may be conducted where the equipment is located or may be removed and examined in a controlled or laboratory facility. If a device/program is password protected, probationer shall disclose said password to his/her Probation Officer.

37. You are prohibited from using the internet to: access pornographic material and/or any commercial social networking website; communicate with other individuals or groups for the purpose of promoting sexual relations with any person(s) under the age of 18; communicate with a person

15

under the age of 18 when you are over the age of 18.

39. Do not download, install, or use any games or applications on any electronic device, such as a smart phone, gaming system, or tablet capable of connecting to the internet, cell phone network, or other computer network, which has the ability to lure, communicate, and/or interact in any manner with a child who is under the age of 18 either electronically or in person.

A.168-69.

"On February 23, 2019, Officer Murray received an e-mail from Lajeunesse's ex-wife alleging that Lajeunesse was engaging in an inappropriate relationship with a teenage girl"; Lajeunesse had been communicating with the girl on Facebook; and the girl was "so young and vulnerable." A.169. "Lajeunesse's ex-wife claimed further that this girl was 'not the only one,' and attached screenshots of the girl's Facebook page." A.169.

In response, Officer Murray located the girl's public Facebook page and confirmed that Lajeunesse had been communicating with her from a Facebook account that he had failed to report to his probation officer. A.169. Having viewed the girl's Facebook photograph, Officer Murray believed the girl to be under eighteen years of age. A.169.

16

Officer Murray contacted FBI Task Force Officer Dana Leonardo for assistance in reviewing the content of Lajeunesse's cellular telephone, but Officer Leonardo refused to examine the phone without a search warrant, explaining that she could provide assistance if there was reason to believe Lajeunesse possessed child pornography. A.170.

On March 11, 2019, Officer Murray conducted a scheduled home visit at Lajeunesse's residence "'to investigate his compliance with the terms of his probation.'" A.170. The district court found:

> Officer Murray entered Lajeunesse's home and asked to see his cell phone. Lajeunesse complied, and when Officer Murray opened the phone, he saw a picture of the girl from Facebook. Officer Murray asked Lajeunesse about the girl, and Lajeunesse stated that the girl was 19 years old and soon turning 20. Lajeunesse also admitted that he had been in a sexual relationship with her since November 2018. Officer Murray observed other applications on the phone that he believed were capable of storing media files.

A.170.

About 15 minutes later, Officer Murray received assistance from Probation Officers Samantha Mason and Corin Kelley, both of whom

17

were more familiar with reviewing electronic devices. Officer Mason conducted a "cursory search" of Lajeunesse's cellular telephone and observed a still picture or thumbnail of a video file, which she believed depicted two teenage females, one of whom was nude and appeared to be approximately 13 or 14 years old. Officer Mason also located an application that she believed could be used to store media files, but Lajeunesse claimed he did not know the pin number to access the application. Officer Murray confiscated the cellular telephone to conduct a more thorough search for child pornography, which Lajeunesse was precluded from possessing by his conditions of probation. A.170.

On March 12, 2019, Officer Murray asked Officer Leonardo to conduct a forensic search of Lajeunesse's cellular telephone, but she refused, maintaining that she could not do so in the absence of a search warrant. A.171. Thereafter, "Officer Murray asked New York State Police Investigator John Deyette to assist with the search as an agent of probation and pursuant to Lajeunesse's terms of probation." A.171. Investigator Deyette's examination of Lajeunesse's cellular telephone revealed images and videos depicting child pornography. A.171.

Lajeunesse was subsequently arrested and charged with multiple counts of Possession of a Sexual Performance by a Child, in violation of New York Penal Law § 263.16. A.171. At the time of

18

Lajeunesse's arrest, New York State Police seized a ZTE cellular telephone from him.  A.171.  That phone was later searched pursuant to a federal search warrant.  A.171.

### b.  Legal Discussion

### (i) Samsung Cellular Telephone

The district court noted that "a probationer's reasonable expectation of privacy is less than that of an ordinary citizen, and is further diminished where he consented to a search condition."  A.173 (citation omitted).  Further, the district court said:

> the Supreme Court has held that when an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable.  Under such circumstances, the Fourth Amendment does not require the officer to obtain a warrant.

A.173 (citations, quotation marks, brackets and footnote omitted).

The district court concluded:

> Here, Lajeunesse's conditions of probation permitted precisely the type of searches that

19

were conducted in this case. Specifically, Lajeunesse agreed to unannounced examination by the supervising Probation Officer or designees of any . . . electronic device(s) to which he had access. This expressly included all cell phones, and further allowed an examination to be conducted either where the equipment is located or . . . in a controlled or laboratory facility. For any password-protected device, Lajeunesse was required to disclose said password to his Probation Officer. Thus, Lajeunesse could have little if any reasonable expectation of privacy regarding his cell phone.

A.174 (citations and original alterations omitted). The district court found, "that Officer Murray's searches of the Samsung cell phone were reasonable and rationally related to his duty to investigate Lajeunesse's suspected violations of probation." A.174.

The district court recounted that the investigation began when Officer Murray received the email from Lajeunesse's ex-wife alleging his inappropriate relationship with a minor, and as a result, Officer Murray reviewed the girl's Facebook page. A.174. The district court added that although Officer Murray believed the girl was under the age of 18 after viewing her on-line photographs, he was not able to verify her age

20

based on the information provided on her Facebook page. A.174.

The district court noted also that Lajeunesse had not reported his Facebook account to the probation office, and it was therefore unauthorized. A.174. The district court explained that pursuant to the conditions of Lajeunesse's probation, he was prohibited from having a social media profile and any "deliberate contact with persons under the age of 18 unless supervised by a person approved by [the] probation officer." A.175. And, the district court noted that Officer Murray was aware that Lajeunesse was on probation as a result of his conviction for a child pornography offense. A.175.

The district court concluded that, "[t]aken together, this evidence shows that Officer Murray had reasonable suspicion to believe that Lajeunesse was using a social media website and engaging in a relationship with an underage girl, and his efforts to investigate further were rationally related to his duty to detect and prevent such violations of probation." A.175 (citation omitted).

The district court described further that Officer Murray continued his investigation by going to Lajeunesse's home to search his cellular telephone, which disclosed a picture of the girl. A.175. At that time, Lajeunesse told Officer Murray that the girl was 19 years old, but Officer Murray was not

21

obligated to accept Lajeunesse's assertion. A.175. "As a result, Officer Murray continued his investigation, with help from Probation Officer Mason, by conducting a 'cursory search' of the phone, turning up what appeared to be a 'still picture or a thumbnail' depicting a nude female who appeared to be approximately 13 or 14 years old." A.175-76.

The district court found that although Officer Murray later learned that Lajeunesse had claimed truthfully that the girl was over 18 years old, at the time he searched Lajeunesse's cellular telephone, he had reasonable suspicion to believe that Lajeunesse was violating the terms of his probation and/or committing new crimes based on the tip from Lajeunesse's ex-wife, his criminal history, the girl's Facebook profile, and Lajeunesse's Facebook communications with her. A.176. The court noted as well that Lajeunesse consented to the initial search of his cell phone, arguably providing an independent basis for the search of his Samsung cellular telephone. A.176.

In sum, the district court found, "that the initial search of Lajeunesse's Samsung cell phone was within the scope of the terms of [his] probation, rationally related to the duties of Officer Murray, and reasonable under the circumstances." A.176 (citations omitted).

Likewise, the district court determined that because the initial search of the Samsung cellular

22

telephone was lawful, the later forensic review by the New York State Police, acting as an agent of Officer Murray, was supported by reasonable suspicion and was lawful. A.176-77. Accordingly, the district court denied Lajeunesse's motion to suppress evidence obtained from his Samsung cellular telephone. A.177.

### (ii) ZTE Cellular Telephone

Having found that the search of Lajeunesse's Samsung cellular telephone was lawful, the district court denied Lajeunesse's motion to suppress any evidence seized from the ZTE cellular telephone as derivative of an unlawful search. A.177-78.

### C. Change of Plea Proceeding

At his change of plea proceeding, Lajeunesse confirmed that he was satisfied with the representation he had received, and that his attorney had advised him of his rights. A.225-26. Lajeunesse likewise confirmed that he had reviewed his plea agreement with his attorney and understood it. A.236-37. Of particular relevance here, the following colloquy occurred:

The Court: And you understand that you may not appeal your sentence if the Court sentences you to 210 months or less?

Lajeunesse: No. Yes, I mean.

23

The Court: You understand that?

Lajeunesse: Yes.

The Court: That's in your plea agreement, right?

Lajeunesse: Yes.

The Court: Okay. All right, sir.  Thank you.

A.243.

## D. Sentencing Proceedings

### 1. Presentence Investigation Report

Using the 2021 Sentencing Guidelines manual, PSR  ¶ 38,  the  Probation  Office  determined Lajeunesse's Guidelines offense level to be 33, his criminal history category to be III, PSR ¶ 69, and his Guidelines imprisonment range to be 180 to 210  months,  PSR  ¶ 104.   Lajeunesse  faced  a statutory  term  of  imprisonment  of  10  to  20  years on  count  1;  15  to  40  years  on  count  2;  and  a maximum term of 20 years on count 3.  PSR ¶ 103.

24

## 2. Sentencing Memoranda

### a. Lajeunesse's Sentencing Memorandum

In mitigation of sentence, Lajeunesse discussed his difficult upbringing, mental health issues, and substance abuse. Dkt.58; A.250-53. Defense counsel wrote:

> Although courts are often justified in what may appear to be self-serving statements submitted in letters to the court, Terry LaJeunesse writes a heartfelt letter to your Honor. (LaJeunesse Letter, Exhibit 1). The fact that he is willing to reflect and write the Court indicates that he is willing to take steps and seek treatment for his mental health, as well as substance abuse issues.

A.252.[7] Similarly, Lajeunesse claimed that the allegations against him, which resulted in the search of his cellular telephone, were proven false; he was not involved in a romantic relationship with a minor, and he denied ever abusing his daughters. A.253.

Lajeunesse argued that the guidelines applicable to his child pornography offense were

---

[7] Lajeunesse has provided his district court sentencing letter to this Court under separate cover.

25

sufficiently flawed that the district court should not sentence him within the resulting sentencing range. A.253-56. Lajeunesse requested that the district court impose the mandatory minimum fifteen-year term of imprisonment. A.257-60.

### b. Government's Sentencing Memorandum

In its sentencing memorandum, Dkt.60; A.261-69, the government requested that the district court impose a sentence within the Guidelines range of 180 months, the statutory minimum term of imprisonment, and 210 months, the top of the Guidelines range of imprisonment. A.267. The government premised its request on Lajeunesse having possessed child pornography while on probation for a New York State child pornography-related offense, the nature of the images Lajeunesse possessed, and his attempt to have his minor son take responsibility for the images that he possessed. A.267-69.

### 3. Sentencing Hearing

At the sentencing hearing, defense counsel reiterated the arguments in mitigation of sentence in his sentencing memorandum, and requested a term of imprisonment at the fifteen-year mandatory minimum. A.273-76. Defense counsel's argument was based, in part, on the letter Lajeunesse had written to the district court. A.27 ("I'm asking you to just consider how his —

26

his letter and his — represents a changed individual").

 Before imposing sentence, the district court noted that it had:

> reviewed and considered all the pertinent information, including, but not limited to, the presentence investigation report, the addendum, the conditional plea agreement, submissions by counsel, and the sentencing guidelines manual, the factors outlined in 18 U.S.C., Section 3553(a), and the Court adopts the factual information and the guideline applications contained in the presentence investigation report.

> Court finds the total offense level is 33, the criminal history category is III, and the guideline imprisonment range is 168 to 210 months; however, as the statutorily authorized minimum sentence of 15 years on count two is greater than the minimum of the guideline range, the guideline range becomes 180 to 210 months, pursuant to Section 5G1.1(c)(2).

> Count one requires a 10-year statutory minimum, and count two requires a 15-year statutory minimum.

> In imposing sentence, the Court has considered various factors, including the

27

defendant's criminal history, which includes
eight prior convictions, including three
felonies and five misdemeanors. Although
most of the defendant's convictions are dated
and related to driving under the influence of
alcohol, his most-recent conviction was for
possessing child pornography, and the
defendant was on probation for that offense
when he committed the instant offense,
which, in this Court's view, is one of the most
aggravating circumstances here.

He had been on probation for only nine
months at the time of the instant offense was
— it was — when it was detected.
Additionally, following his arrest and
incarceration for child pornography offenses
in this case, the defendant attempted to
persuade his then 16-year-old son, who
would have been 14 at the time of [sic] the
conduct was committed, to provide false
information to law enforcement indicating
he was the individual who downloaded the
child pornography possessed by the
defendant in this case.

In letters mailed from the correctional
facility where he was lodged, defendant
provided specific instructions to his son
about how to take responsibility for the
defendant's crimes. His letters include a
statement such as all I'm asking is for you to
create a little reasonable doubt. All I'm

28

asking is that you — that you used my phone because yours was broken and you went on a file-sharing site, downloaded those files on accident, key word accident, opened them, and it was a mix of bag of shit. You deleted them and you can say you — don't remember this site and you only remember my password as having — and at the time, — the timeframe was November 8, 2018, to February 2019 that you used a handful of times. You were 14 at the time and they wouldn't be able to do jack shit to you anyway.

The Court is aware of the prior sexual abuse allegations against defendant involving all three of his daughters, which were investigated in 2007, as well as another investigation for similar allegations involving his niece in 2011 when she was ten years old.

The Court is also aware that prosecution was declined for both offenses, and when recently interviewed as adults, the defendant's daughters could not recall any abuse by the defendant. However, the allegations are troubling and are some of the defendant's daughters' statements — as are some of the defendant's daughters' statements during recent interviews by law enforcement.

29

Court has considered defendant's lengthy history of alcohol abuse and knows he's had multiple treatment opportunities, which appear to have failed.

The Court has also considered the defendant's medical and mental health conditions as well as the abuse he's suffered during his upbringing. The Court notes he was also enrolled in sex offender treatment while on probation with Warren County in 2018 but failed to attend multiple appointments, and then missed a polygraph appointment later that year.

Although his sex offender treatment attendance and compliance improved by February of 2019, he was found in possession of child pornography one month later.

The Court is concerned of the defendant's inability to refrain from viewing child pornography even while serving a brief one-year term of probation for the same conduct as a part of the sentence from another court, as well as his noncompliance with sex offender treatment which could assist in preventing or reducing recidivism risk.

Additionally, his attempts to persuade his minor son to take responsibility for his behavior which led to additional obstruction of justice conviction in this case also

30

demonstrated the defendant is not accepting responsibility for his own behavior and will go to any lengths to avoid such — to accepting that responsibility.

Court determines the defendant's offense behavior demonstrates his significant risk of danger to the public. As such, the Court will impose a sentence which is sufficient but not greater than necessary to meet the goals of sentencing outlined in 18 U.S.C., Section 3553(a), including the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, as well as afford adequate deterrence to criminal conduct and to protect the public from further crimes of this defendant.

The Court is greatly concerned about the repetitive nature of the defendant's conduct, as well as his attempts to evade responsibility for that conduct.

Upon your plea of guilty on counts one, two and three of the superseding information, it is the judgment of the Court that you are hereby committed to the custody of the bureau of prisons for a period of 198 months on each of counts one, two and three, counts to run concurrent, for a total term of 198 months.

31

A.277-81.

The district court recommended to the Bureau of Prisons that Lajeunesse participate in sex offender, mental health, and substance abuse treatment. A.281. The court granted Lajeunesse's request for a recommendation that he be housed as close to New York's Capitol District as possible, but said that "that's secondary to the best possible sex offender treatment programs and mental health treatment programs that are available to him within the bureau of prisons." A.282. The court imposed a twenty-year term of supervised release on each of counts one and two of the information, and a three-year term of supervised release on count three of the information, all to run concurrently with one another. A.282.

## SUMMARY OF ARGUMENT

This Court should affirm the district court's denial of Lajeunesse's motion to suppress evidence seized from his Samsung cellular telephone. The district court correctly determined that the search of the phone was conducted within the scope of Lajeunesse's probation, rationally and reasonably related to the performance of Probation Officer Murray's duties, and supported by reasonable suspicion that the cellular telephone contained images of child pornography and probable cause to believe that Lajeunesse was using a Facebook account that he failed to disclose to the probation office.

32

Lajeunesse had a significantly diminished expectation of privacy in his cellular telephone, both because he was a probationer, and because he agreed to a search condition permitting the search of his cellular telephone while on probation. The district court was correct in determining that Probation Officer Murray reasonably believed that the girl depicted on her Facebook page was less than 18 years old. Probation Officer Murray was not obligated to accept Lajeunesse's contention, prior to the search of the cellular telephone, that girl was 19 years old. As the district court found, it was only after the search of the cellular telephone that Probation Officer Murray learned that Lajeunesse had been truthful in representing the girl's age.

Viewing the totality of the circumstances surrounding the search of Lajeunesse's cellular telephone, including his significantly diminished expectation of privacy as a probationer who agreed to a search condition, and the state's interest in ensuring Lajeunesse's compliance with the terms of his probation and in protecting the public, the search of his cellular telephone was a lawful special needs search that satisfied the Fourth Amendment's requirement that all searches be reasonable.

Probation Officer Murray acted reasonably in investigating allegations of Lajeunesse having violated the conditions of his probation. There is

33

no evidence that Probation Officer Murray engaged in deliberate or systemic wrongdoing. Suppression of the evidence obtained from Lajeunesse's cellular telephone is unwarranted because it would impose too great a cost with no corresponding benefit.

This Court should dismiss so much of Lajeunesse's appeal that seeks a remand because he was denied his right to allocute at sentencing. Lajeunesse knowingly agreed to waive his right to appeal any sentence of 210 months or less, and the district court sentenced him to a 198-month term of imprisonment. Lajeunesse's claim that he was denied his right to allocute at sentencing challenges part of the sentencing phase of the proceedings below, and is therefore encompassed within the scope of his waiver. Waivers of appellate rights are presumptively enforceable, and Lajeunesse has not alleged any of the circumstances that this Court has determined will preclude enforcement of an appellate waiver.

Moreover, this is not a case where Lajeunesse was sentenced at the whim of the district court. Counsel for Lajeunesse thoroughly presented mitigation information on his behalf, and Lajeunesse himself wrote to the district court in mitigation of sentence. Advised of this information, the district court provided a detailed explanation for the sentence it imposed.

34

This Court has recognized that valid waivers of appeal are enforceable against claims of error pursuant under Fed. R. Crim. P. 32, and should likewise dismiss Lajeunesse's claim of Rule 32 error in the district court's failure to provide him an opportunity to allocute at sentencing.

## ARGUMENT

**POINT I: The District Court Did Not Err In Denying Lajeunesse's Motion to Suppress Evidence Obtained From His Samsung Cellular Telephone.**

## A. Governing Law

"A probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable.'" *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987). Although many, if not most, searches must be conducted pursuant to a warrant supported by probable cause, the Supreme Court has "permitted exceptions when 'special needs,' beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Id.* (citation and quotation marks omitted). One circumstance where this exception applies is a "State's operation of a probation system." *Id.*

This is so, in part, because "[t]o a greater or lesser degree, it is always true of probationers (as

35

we have said it to be true of parolees) that they do
not enjoy the absolute liberty which every citizen
is entitled, but only conditional liberty properly
dependent on observances of special probation
restrictions." *Id*. at 874 (citation and original
alterations omitted). "Supervision, then, is a
'special need' of the State permitting a degree of
impingement upon privacy that would not be
constitutional if applied to the public at large." *Id*.
at 875. In *Griffin*, the Court upheld the search of
a probationer's home by a probation officer, who
had received information from a police officer that
the probationer might have guns in his apartment,
because Wisconsin's probation system permitted
the warrantless search of a probationer's home if,
*inter alia*, it was supported by "reasonable
grounds." *Id*.

In *United States v. Knights*, 534 U.S. 112
(2001), the Court revisited the circumstances
under which a probationer's residence could be
searched without a warrant – but in *Knights*, the
search was conducted by a law enforcement officer
– not a supervising probation officer. The Court
explained:

 The touchstone of the Fourth Amendment is
 reasonableness, and the reasonableness of a
 search is determined by assessing, on the
 one hand, the degree to which it intrudes
 upon an individual's privacy and, on the
 other, the degree to which it is needed for the
 promotion of legitimate governmental

36

interests. Knights' status as a probationer subject to a search condition informs both sides of that balance.

*Id*. at 118-19 (citation and quotation marks omitted).

As for the probationer's privacy interest, the Court said that, "just as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." *Id*. at 119. "In assessing the governmental interest side of the balance, it must be remembered that the very assumption of the institution of probation is that the probationer is more likely than the ordinary citizen to violate the law." *Id*. at 120 (citation and quotation marks omitted). The Court explained further:

The State has a dual concern with a probationer. On the one hand is the hope that he will successfully complete probation and be integrated back into the community. On the other is the concern, quite justified, that he will be more likely to engage in criminal conduct than an ordinary member of the community.

*Id*. at 120-21. The Court held that "the balance of these considerations requires no more than

37

reasonable suspicion [for a police officer] to conduct a search of this probationer's house." *Id*. at 121.

This Court has noted that "parolees enjoy even less of the average citizen's absolute liberty than do probationers." *United States v. Newton*, 369 F.3d 659, 665 (2d Cir. 2004) (quoting *United States v. Grimes*, 225 F.3d 254, 258 (2d Cir 2000) (per curiam) (quoting *United States v. Cardona*, 903 F.2d 60, 63 (1st Cir. 1990)). Nonetheless:

> Probation, parole, and supervised release systems are charged with similar duties: (1) to assist the offender in the rehabilitation process; (2) to protect the public from persons whose release proves threatening to the community; and (3) to provide information and recommendations to the court or parole board so that it may make appropriate decisions regarding continued freedom for the individual released. Accordingly, it is appropriate to draw from the law on probation and supervised release in considering whether the warrantless . . . search of [a parolee's] residence was reasonable under the special needs exception to the warrant requirement.

*Newton*, 369 F.3d at 265 n.2 (citation and quotation marks omitted); *see also United States v. Lambus*, 897 F.3d 368, 402-03 (2018) ("Probationers, parolees, and persons subject to supervised release have significantly diminished

expectations of privacy.") (citations and quotation marks omitted).

An offender subject to supervision who agrees to a condition permitting searches by parole or probation officers has a significantly reduced expectation of privacy. *See, e.g., United States v. Reyes*, 283 F.3d 446, 457 (2d Cir. 2002) ("It is beyond doubt that Reyes' actual expectation of privacy in the environs of his home was necessarily and significantly diminished because Reyes was a convicted person serving a court-imposed term of federal supervised release that mandated home visits 'at any time' from his federal probation officer."); *see also Newton*, 369 F.3d at 665 (citing *Reyes*, and noting that parolee had signed search condition as condition of his New York State parole); *Knights*, 534 U.S. at 114, 118 (noting that probation condition requiring probationer to submit to search of his person and property "at any time" was "salient circumstance" in the Fourth Amendment analysis of search of probationer's apartment); *Samson v. California*, 547 U.S. 843, 847 (2006) (Court determined that "a condition of release can so diminish or eliminate a [parolee's] expectation of privacy that a suspicionless search by a [police] officer [did] not offend the Fourth Amendment")

In determining whether a parole search was lawful, this Court has examined the state procedures pursuant to which the search was conducted, and if those procedures met

39

constitutional muster, found the search to be lawful. For example, in *Grimes*, 225 F.3d 254, this Court said:

> We must, therefore, assess New York's search regulations for parolees as they have been interpreted by state corrections officials and state courts, and, using this interpretation, we must determine whether the special needs attendant to the operation of New York's parole system justify their departure from traditional Fourth Amendment principles. We conclude that they do.

225 F.3d at 258 (cleaned up). The Court explained further that:

> we can see no reason to distinguish between legislatively–and judicially–crafted search rules for these purposes. The critical question, for Fourth Amendment purposes, is whether the regulation contains a reasonableness requirement (or some more stringent standard); it is not which branch of Government generated the rule.

225 F.3d at 259 n.3. And, the Court found:

> Indeed, the New York rule is coextensive with the requirements of the Fourth Amendment. A rule indicating that a search of a parolee is permissible so long as it is

40

reasonably related to the parole officer's duties is identical to a rule that parole officers may conduct searches so long as they comport with the Fourth Amendment. This is because the doctrine of "special needs" permits those searches that are reasonably related to the special needs animated by management of a parole system.

*Id.* n.4; *see also United States v. Barner*, 666 F.3d 79, 84 (2d Cir. 2012) (noting that "the law requires . . . greater intrusions [on a parolee's privacy] occur pursuant to a rule or regulation 'that itself satisfies the Fourth Amendment's reasonableness requirement'") (citations and some quotation marks omitted).

More recently, however, this Court explained that:

Our precedents make clear that only federal law applies in a federal court's exclusionary rule analysis. Thus, the district court should not have employed the reasonable suspicion standard set forth in [a New York Department of Corrections and Community Supervision regulation]. . . . Under the Special Needs Doctrine, a parole officer may search a parolee so long as the search is reasonably related to the performance of the officer's duties . . . .

*United States v. Braggs*, 5 F.4th 183, 184 (2d Cir. 2021). The Court determined that the search of Braggs' house was lawful, having been conducted after a parole officer "received notice of an anonymous tip suggesting that Braggs had guns in his possession — a clear violation of his parole conditions — he and his team were constitutionally permitted to search the house to determine whether Braggs was complying with the relevant condition." 5 F.4th at 188 (footnote omitted).

## B. Standard of Review

In *United States v. Jones*, 43 F.4th 94, 109 (2d Cir. 2022), this Court explained, "On appeal from a district court's ruling on a suppression motion, we review a district court's findings of fact for clear error, and its resolution of questions of law and mixed questions of law and fact *de novo*." (quoting *United States v. Eldred*, 933 F.3d 110, 114 (2d Cir. 2019)).

## C. Discussion

### 1. Probation Officer Murray conducted a lawful "special needs" search.

This Court should affirm the district court's denial of Lajeunesse's motion to suppress evidence seized from his Samsung cellular telephone. The district court correctly determined that the search was conducted within the scope of Lajeunesse's probation and rationally and reasonably related to

42

the performance of Probation Officer Murray's duties. As well, the district court was correct in its determination that the search was supported by reasonable suspicion that the cellular telephone contained images of child pornography. And, when Probation Officer Murray searched Lajeunesse's cellular telephone, beyond reasonable suspicion, he had probable cause to believe that Lajeunesse was using a Facebook account that he failed to disclose to the probation office, as he was required to do. Under the totality of circumstances, considering Lajeunesse's severely diminished expectation of privacy and New York State's interest in ensuring that Lajeunesse comply with the conditions of his probation and in protecting the public, the search fits well within the parameters of a "special needs" search and the Fourth Amendment's requirement that all searches be reasonable.

Lajeunesse had a significantly diminished expectation of privacy in his cellular telephone, both because he was a probationer, and because he agreed to a search condition permitting the search of his cellular telephone while on probation. Based on the email received from Lajeunesse's former spouse and his review of the Facebook page of the girl with whom Lajeunesse was communicating, Probation Officer Murray had a reasonable suspicion that Lajeunesse was having contact with a minor in violation of the conditions of his probation. Moreover, by viewing the girl's Facebook page, Probation Officer Murray learned

43

that Lajeunesse was himself using an unauthorized Facebook account in violation of the conditions of his probation. As well, Probation Officer Murray was aware that Lajeunesse's underlying offense involved his possession of child pornography. In light of these circumstances, the district court was correct in determining that Probation Officer Murray's search of Lajeunesse's cellular telephone was reasonably related to his duties as a probation officer and supported by a reasonable suspicion that Lajeunesse was violating the conditions of his probation.

The district court likewise was correct in determining that Probation Officer Murray reasonably believed that the girl depicted on her Facebook page was less than 18 years old. Probation Officer Murray was not obligated to accept Lajeunesse's contention, prior to the search of the cellular telephone, that she was 19 years old. As the district court found, it was only after the search of the cellular telephone that Probation Officer Murray learned that Lajeunesse had been truthful in representing the girl's age.

Viewing the totality of the circumstances surrounding the search of Lajeunesse's cellular telephone, including his significantly diminished expectation of privacy as a probationer who agreed to a search condition, and the state's interest in ensuring Lajeunesse's compliance with the terms of his probation and in protecting the public, the search of his cellular telephone was a lawful

44

special needs search that satisfied the Fourth Amendment's requirement that all searches be reasonable.

### 2. Probation Officer Murray's actions were reasonable, making suppression of evidence unwarranted.

"The fact that a Fourth Amendment violation occurred—*i.e.*, that a search . . . was unreasonable—does not necessarily mean that the exclusionary rule applies." *Herring v. United States*, 555 U.S. 135, 140 (2009) (citation omitted). Exclusion of evidence "has always been [the Court's] last resort, not [its] first impulse." *Id.* (citation omitted); *see also United States v. Gomez*, 877 F.3d 76, 93-94 (2d Cir. 2017) (same).

Moreover, "the exclusionary rule is not an individual right and [it] applies only where it results in appreciable deterrence." *Herring*, 555 U.S. at 141 (citation, internal quotation marks, and original brackets omitted). "In addition, the benefits of deterrence must outweigh the costs." *Id.* (citation omitted). Indeed, "the rule's costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging its application." *Id.* (citations, internal quotation marks, and brackets omitted). The exclusionary rule should not be applied unless police conduct "[is] sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the

45

justice system." *Id.* at 144; *see United States v. Julius*, 610 F.3d 60, 68 (2d Cir. 2010) ("*Herring* requires careful consideration by district courts of whether the goal of deterring violations of the Fourth Amendment outweighs the costs to truth-seeking and law enforcement objectives in each case."); *see also United States v. Smith*, 967 F.3d 198, 211-13 (2d Cir. 2020) (finding search unconstitutional but refusing to suppress evidence under *Herring*).

Here, Probation Officer Murray acted reasonably in all respects. He received information that Lajeunesse was violating the conditions of his probation, and he took reasonable investigative steps to determine whether the information he received was accurate.

There is no evidence here of deliberate or systemic wrongdoing. Suppression of the evidence obtained from Lajeunesse's cellular telephone is unwarranted and would impose too great a cost with no corresponding benefit. The district court's denial of Lajeunesse's suppression motion should be affirmed.

46

**POINT II:** **Lajeunesse's Plea Agreement Waiver of His Appellate Rights Bars Consideration of His Claim that the District Court Failed to Provide Him a Right to Allocute at Sentencing.**

## A. Governing Law

### 1. Plea Agreement Waivers of Appellate Rights

This Court has explained that, "'[w]aivers of the right to appeal a sentence are presumptively enforceable,' *United States v. Arevalo*, 628 F.3d 93, 98 (2d Cir. 2010), and the exceptions to this rule 'occupy a very circumscribed area of our jurisprudence,' *United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000);" *United States v. Borden*, 16 F.4th 351, 354-55 (2d Cir. 2021). This Court has "voided appeal waivers where the sentence imposed was based on unconstitutional factors—such as race, or the ability to pay restitution. Similarly, [this Court has] voided waivers where a sentencing court failed to enunciate any rationale for the defendant's sentence, and thus abdicated its judicial responsibility." *United States v. Riggi*, 649 F.3d 143, 147 (2d Cir. 2011) (citations, quotation marks, brackets and parenthetical omitted). In *United States v. Coston*, 737 F.3d 235 (2d Cir. 2013), this Court explained that:

47

> The decisive considerations motivating our decision to enforce, *vel non*, an appeal waiver are the nature of the right at issue and whether the sentence was reached in a manner that the plea agreement did not anticipate. Provided that these considerations are satisfactory, we will enforce an appeal waiver despite meaningful errors in sentencing.

*Id*. at 237 (citation and quotation marks omitted).

In determining whether a sentence was reached in a manner that the parties did not "anticipate," this Court has explained that the operative question is whether the alleged error is one that the parties assumed the risk of occurring. For example, in *United States v. Yemitan*, 70 F.3d 746, 748 (2d Cir. 1995), the Court explained "a sentence tainted by racial bias could not be supported on contract principles, since neither party can be deemed to have accepted such a risk or be entitled to such a result as a benefit of the bargain." And, as the Court explained in *Riggi*, 649 F.3d at 148, "As to unanticipated matters at sentencing, a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court." (citation and quotation marks omitted); *cf. United States v. Liriano-Blanco*, 510 F.3d 168 (2d Cir. 2007) (after determining that "Liriano-Blanco [could not] be deemed to have accepted the risk that the judge sentencing him would do so based on the judge's

48

mistaken impression that his sentencing decision could be appealed," *id.* at 174, Court declined to reach merits of appeal, and remanded "the case to the district court for it to reconsider what further steps, if any, it thinks warranted in light of Liriano-Blanco's inability to appeal from the court's ruling," *id.* at 175.

In *Arevalo*, 628 F.3d 93, the Court determined that a valid waiver of the right to appeal a sentence below a specified term bars appellate consideration of related allegations of Fed. R. Crim. P. 32 errors. The defendant in *Arevalo*, named Vigil, sought to appeal the district court's failure to resolve disputed factual issues in the presentence investigation report. 628 F.3d at 96. In rejecting Vigil's attempt to circumvent his waiver of appellate rights, this Court explained:

> Vigil's waiver of his right to challenge his sentence plainly includes a waiver of his right to claim errors arising out of the District Court's crafting of Vigil's sentence. Because the conduct Vigil challenges—the District Court's alleged failure to make findings regarding the disputed portions of the presentence report at sentencing—was clearly part of the sentencing phase of Vigil's case, Vigil's challenge is within the scope of his appeal waiver and is foreclosed.

628 F.3d at 97.

49

Similarly, in *United States v. Buissereth*, 638 F.3d 114 (2d Cir. 2011), the Court rejected defendant's claim that his "appeal-waiver provision is unenforceable because the sentencing court abdicated its 'judicial responsibility' by failing to make rulings and findings at his sentencing hearing." 638 F.3d at 117 (citation omitted). This was so, notwithstanding that the district court failed to:

> (1) rule on the numerous filed objections to the PSR; (2) rule on the requests for downward departures and a variance; (3) adopt the findings of the PSR; (4) mention, much less articulate its consideration of, the relevant factors set forth in 18 U.S.C. § 3553(a); or (5) calculate an applicable sentencing range under the Sentencing Guidelines.

*Id.*

### 2. Right to Allocute at Sentencing

Fed. R. Crim. P. 32 provides, in part:

> \*\*\*

> (i) Sentencing.

> \*\*\*

> (4) Opportunity to Speak.

50

(A) By a Party. Before imposing sentence, the court must:

\*\*\*

(ii) address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence . . . .

Fed. R. Crim. P. 32(i)(4).

Rule 32 "demands that each defendant be allowed a meaningful right to express relevant mitigating information before an attentive and receptive district judge." *United States v. Li*, 115 F.3d 125, 133 (2d Cir. 1997). As such, a district court's failure to address a defendant at sentencing, and determine whether he wishes to make a statement and present mitigating information ordinarily requires resentencing. *United States v. Margiotti*, 85 F.3d 100, 103 (2d Cir. 1996) (citing *United States v. Axelrod*, 48 F.3d 72, 72-73 (2d Cir. 1995) (per curiam)).

## B. Standard of Review

This Court:

review[s] plea agreements, including waivers of the right to appeal, *de novo* and in accordance with general principles of the law

51

of contract. *See United States v. Padilla*, 186 F.3d 136, 139–40 (2d Cir. 1999). Since plea agreements waive defendants' fundamental constitutional rights, we construe their terms strictly against the government, "hold[ing] prosecutors engaging in plea bargaining to the most meticulous standards of both promise and performance." *United States v. Lawlor*, 168 F.3d 633, 636 (2d Cir. 1999) (citation omitted).

*United States v. Green*, 897 F.3d 443, 447 (2d Cir. 2018).

## C. Discussion

This Court should dismiss Lajeunesse's claim that the district court failed to provide him an opportunity to allocute at sentencing. Lajeunesse's valid waiver of his right to appeal any sentence of 210 months or less precludes an appeal of the procedures resulting in the imposition of his term of imprisonment below 210 months. None of the circumstances identified by this Court pursuant to which an appeal waiver will not be enforced are present here.

In his plea agreement, Lajeunesse reserved the right to appeal the district court's denial of his suppression motion, but waived his right to appeal, *inter alia*, "[a]ny sentence to a term of imprisonment of 210 months or less." A.193. When he entered his guilty plea, Lajeunesse

52

confirmed his understanding of this waiver provision. A.243.

Although the right to allocute at sentencing is "meaningful," *see Coston*, 737 F.3d at 237, that is an insufficient basis not to enforce Lajeunesse's appellate waiver. Because the conduct Lajeunesse challenges — the District Court's failure to afford him the right to allocute at sentencing — was clearly part of the sentencing phase of Lajeunesse's case, his challenge is within the scope of his appeal waiver and is foreclosed. *See Arevalo*, 628 F.3d 97.

This is not a case in which Lajeunesse was sentenced at the "whim" of the district court. *See Riggi*, 649 F.3d at 148. In the district court, defense counsel argued comprehensively in mitigation of sentence. In Lajeunesse's sentencing memorandum, counsel detailed Lajeunesse's difficult upbringing, mental health issues, and substance abuse. A.250-53. Defense counsel brought to the district court's attention the letter that Lajeunesse wrote to the court, in which Lajeunesse expressed remorse and regret for his actions; said that he would "never" engage in similar conduct again; discussed how he "struggled" with addiction and mental health issues for his entire life; had taken steps while incarcerated towards rehabilitation; had turned to religion; expressed his feelings for his children, and stated his desire to become a responsible and productive member of society and a better father. A.252.

53

Defense counsel argued that the guidelines applicable to Lajeunesse's child pornography offense were sufficiently flawed that the district court should not sentence him within the resulting sentencing range, A.253-56, and requested that the district court impose the mandatory minimum fifteen-year term of imprisonment. A.257-60.

At the sentencing hearing, defense counsel reiterated the arguments in mitigation of sentence in his sentencing memorandum, and again requested a term of imprisonment at the fifteen-year mandatory minimum. A.273-76. Defense counsel again brought Lajeunesse's letter to the court's attention. A.27 ("I'm asking you to just consider how his — his letter and his — represents a changed individual").

Before imposing sentence, the district court noted that it had reviewed, *inter alia*, defense counsel's submissions (which included Lajeunesse's correspondence to the court). The district court also discussed Lajeunesse's arguments in mitigation of sentence, including his "lengthy history of alcohol abuse . . . medical and mental health conditions as well as the abuse he's suffered during his upbringing." A.280. On appeal, Lajeunesse has not identified what additional information he would have presented had he been given the opportunity to do so.

54

Under these circumstances, this Court should enforce Lajeunesse's appellate waiver, and decline to consider his claimed Rule 32 error. *See Arevalo*, 628 F.3d at 97; *see also United States v. Quinones*, 707 F. App'x 184, 185-86 (4th Cir. 2017) (dismissing so much of appeal that claimed district court had not provided defendant with timely opportunity to allocute at sentencing under Fed. R. Crim. P. 32(i)(4)(A)(ii)) (citing *Arevalo*, 628 F.3d at 100); *United States v. Whitmer*, 505 F. App'x 167, 173, 174 (3d Cir. 2012) (appellate waiver barred defendant's claims, including errors in right to allocution).

55

**CONCLUSION**

The district court's denial of Lajeunesse's motion to suppress should be affirmed; Lajeunesse's claim that he was denied the right to allocute at sentencing should be dismissed pursuant to Lajeunesse's waiver of appellate rights.

Dated:  Albany, New York
       November 1, 2022
       (original filed on September 8, 2022)

          Respectfully submitted,

          CARLA B. FREEDMAN
          *United States Attorney*
          *Northern District of New York*
          *Attorney for Appellee*

          /s/Paul D. Silver

By:  PAUL D. SILVER
     *Assistant United States Attorney*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7) of the Federal Rules of Appellate Procedure, the undersigned counsel for the United States hereby certifies that this brief complies with the type volume limitation of Rule 32(a)(7)(B) and Local Rule 32.1. As measured by the word-processing system used to prepare this brief, there are approximately 10,060 words in the brief.

CARLA B. FREEDMAN
*United States Attorney*
*Northern District of New York*

/s/Paul D. Silver

By: PAUL D. SILVER
*Assistant United States Attorney*